**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

**District of Delaware**

(State)

Case number *(if known)*: _____   Chapter __11__

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/25

If more space is needed, attach a separate sheet to this form.  On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| 1. | **Debtor's Name** | **Marelli Germany GmbH** |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years** | **Marelli Automotive Lighting Reutlingen (Germany) GmbH** |
| | Include any assumed names, trade names, and *doing business as* names | |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **78094/50901** |

4. **Debtor's address**

**Principal place of business**

**Ludwig-Ehrhard-Strasse 4**
Number          Street

**72760 Reutlingen**
City                    State    Zip Code

**Germany**

**Mailing address, if different from principal place of business**

**26555 Northwestern Highway**
Number          Street

P.O. Box

**Southfield, Michigan 48033**
City                    State    Zip Code

**Location of principal assets, if different from principal place of business**

Number          Street

City                    State    Zip Code

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | **https://www.marelli.com** |

6. **Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

Debtor    **Marelli Germany GmbH**                                    Case number *(if known)* _____
         Name

---

**7. Describe debtor's business**

A. *Check One:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

---

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

---

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

**3363 (Other Motor Vehicle Parts Manufacturing)**

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check One:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check **all** that apply:*

☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

---

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No

☐ Yes.    District _____    When _____    Case number _____
                                              MM/DD/YYYY

         District _____    When _____    Case number _____
                                              MM/DD/YYYY

---

Debtor    **Marelli Germany GmbH**                                     Case number *(if known)* _____
         Name

---

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No
☒ Yes.    Debtor    **See Rider 1**                    Relationship    **Affiliate**

District    **District of Delaware**

When    **06/11/2025**
                                                         MM / DD / YYYY
Case number, if known    _____

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☐  Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒  A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No
☐ Yes.  Answer below for each property that needs immediate attention.  Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐  It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard?    _____

☐  It needs to be physically secured or protected from the weather.

☐  It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐  Other

**Where is the property?**    _____
                              Number          Street

_____
City                          State      Zip Code

**Is the property insured?**

☐ No

☐ Yes.    Insurance agency    _____

Contact name    _____

Phone    _____

---

| **Statistical and administrative information** |
| --- |

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

**(on a consolidated basis)**

☐ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5,001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☒ More than 100,000

---

| Debtor | **Marelli Germany GmbH** | | Case number *(if known)* | |
|---|---|---|---|---|
| | Name | | | |

| **15. Estimated assets** | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|---|
| **(on a consolidated basis)** | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☒ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

| **16. Estimated liabilities** | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|---|
| **(on a consolidated basis)** | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☒ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

| **17. Declaration and signature of authorized representative of debtor** | The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition. |
|---|---|

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **06/11/2025**
           MM/ DD / YYYY

**✗**   **/s/ Marisa Iasenza**             **Marisa Iasenza**
    Signature of authorized representative of debtor     Printed name

Title   **Authorized Signatory**

| **18. Signature of attorney** | **✗**   **/s/ Laura Davis Jones** | Date   **06/11/2025** |
|---|---|---|
| | Signature of attorney for debtor | MM/DD/YYYY |

**Laura Davis Jones**
Printed name

**Pachulski Stang Ziehl & Jones LLP**
Firm name

**919 North Market Street, 17th Floor, P.O. Box 8705**
Number            Street

**Wilmington**                **Delaware**     **19801**
City                              State       ZIP Code

**(302) 652-4100**              **ljones@pszjlaw.com**
Contact phone                    Email address

**2436**                          **Delaware**
Bar number                   State

| Fill in this information to identify the case: |
| --- |

United States Bankruptcy Court for the:

**District of Delaware**

(State)

Case number *(if known)*: _____    Chapter    **11**

☐ Check if this is an
amended filing

### Rider 1
### Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the District of Delaware for relief under chapter 11 of title 11 of the United States Code. The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of Marelli Automotive Lighting USA LLC.

- Marelli Automotive Lighting USA LLC
- Automotive Lighting UK Limited
- Calsonic Kansei (Shanghai) Corporation
- CK Trading De México, S. De R.L. De C.V.
- Magneti Marelli Argentina S.A.
- Magneti Marelli Conjuntos de Escape S.A.
- Magneti Marelli do Brasil Indústria e Comércio S.A
- Magneti Marelli Repuestos S.A.
- Marelli (China) Co., Ltd
- Marelli (China) Holding Company
- Marelli (Guangzhou) Corporation
- Marelli (Thailand) Co., Ltd
- Marelli (Xiang Yang) Corporation
- Marelli Aftermarket Germany GmbH
- Marelli Aftermarket Italy S.p.A.
- Marelli Aftermarket Poland Sp. z o.o.
- Marelli Aftermarket Spain S.L.
- Marelli Aftersales Co., Ltd.
- Marelli Argentan France
- Marelli Automotive Chassis System (Guangzhou) Co., Ltd.
- Marelli Automotive Components (Guangzhou) Corporation
- Marelli Automotive Components (Wuhu) Co., Ltd.
- Marelli Automotive Components (Wuxi) Corporation
- Marelli Automotive Electronics (Guangzhou) Co., Ltd.
- Marelli Automotive Lighting (Foshan) Co., Ltd.
- Marelli Automotive Lighting France
- Marelli Automotive Lighting Italy S.p.A.
- Marelli Automotive Lighting Jihlava (Czech Republic) s.r.o.
- Marelli Automotive Lighting Juárez Mexico, S.A de C.V.
- Marelli Automotive Lighting Tepotzotlán México S. de R.L. de C.V.
- Marelli Automotive Systems Europe PLC
- Marelli Automotive Systems UK Limited
- Marelli Bielsko-Biała Poland Sp. z o.o.
- Marelli Business Service (Dalian) Co., Ltd.
- Marelli Business Service Corp.
- Marelli Cabin Comfort Mexicana, S.A. de C.V.
- Marelli Cabin Comfort Trading de México, S. de R.L. de C.V.
- Marelli Cluj Romania S.R.L.
- Marelli Cofap do Brasil Ltda
- Marelli Corporation
- Marelli do Brasil Indústria e Comércio Ltda.
- Marelli eAxle Torino S.R.L.
- Marelli Engineering (Shanghai) Co., Ltd.
- Marelli EPT Strasbourg (France)
- Marelli España S.A.
- Marelli Europe S.p.A.
- Marelli France
- Marelli Fukushima Corporation
- Marelli Germany GmbH
- Marelli Global Business Services America, S. de R.L. de C.V.
- Marelli Global Business Services Europe s.r.o.
- Marelli Holding USA LLC
- Marelli Holdings Co., Ltd.
- Marelli Indústria e Comércio de Componentes Automotivos Brasil Ltda.
- Marelli International Trading (Shanghai) Co., Ltd
- Marelli Iwashiro Corp.
- Marelli Kechnec Slovakia s.r.o.
- Marelli Kyushu Corporation
- Marelli Mako Turkey Elektrik Sanayi Ve Ticaret Anonim Sirketi
- Marelli Mexicana, S.A. de C.V.
- Marelli Morocco LLC
- Marelli North America, Inc.
- MARELLI NORTH CAROLINA USA LLC
- Marelli Ploiesti Romania S.R.L.
- Marelli Powertrain (Hefei) Co., Ltd.
- Marelli R&D Co., Ltd.
- Marelli Ride Dynamics México S. de R.L. de C.V.
- Marelli Sistemas Automotivos Indústria e Comércio Brasil Ltda
- Marelli Smart Me Up
- Marelli Sophia Antipolis France
- Marelli Sosnowiec Poland Sp. z o.o.
- Marelli Suspension Systems Italy S.P.A.
- Marelli Tennessee USA LLC
- Marelli Toluca México S. de R.L. de C.V.
- Marelli Tooling (Guangzhou) Corporation
- Marelli Yokohama Co., Ltd.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MARELLI GERMANY GMBH, | ) | Case No. 25-_____(___) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**LIST OF EQUITY SECURITY HOLDERS**[1]

| Equity Holder | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|
| Marelli Corporation | 26555 Northwestern Highway<br>Southfield, Michigan 48033 | 100% |

---

[1] This list serves as the disclosure required to be made by the debtor pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure.  All equity positions listed indicate the record holder of such equity as of the date of commencement of the chapter 11 case.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| _____ ) | |
| In re: ) | Chapter 11 |
| ) | |
| MARELLI GERMANY GMBH, ) | CASE NO. 25-_____(___) |
| ) | |
| Debtor. ) | |
| _____ ) | |

**<u>CORPORATE OWNERSHIP STATEMENT</u>**

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| Marelli Corporation | 100% |

Debtor ___ MARELLI AUTOMOTIVE LIGHTING USA, LLC et al. _____     Case number (if known)_____

Fill in this information to identify the case:

| Debtor name: Marelli Automotive Lighting USA, LLC, et al. |
| United States Bankruptcy Court for the: District of Delaware |
| Case number (if known): |

☐ Check if this is an amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders
12/15

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim — If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | STELLANTIS TAURUSAVENUE 1 HOOFDDORP, 2312 NETHERLANDS | ATTN: DOUG OSTERMANN TITLE: CHIEF FINANCIAL OFFICER PHONE: +1 (217) 330-7428 EMAIL: DOUG.OSTERMANN@STELLANTIS.COM | TRADE PAYABLE / CUSTOMER ADVANCE | | | | $ 453,958,618 |
| 2 | NISSAN 1-1, TAKASHIMA 1-CHOME YOKOHAMA, 220-8686 JAPAN | ATTN: MITSURO ANTOKU TITLE: CHIEF QUALITY OFFICER PHONE: +1 (800) 647-7261 EMAIL: MITSURO.ANTOKU@NISSAN.CO.JP | TRADE PAYABLE / CUSTOMER ADVANCE | | | | $ 313,145,938 |
| 3 | BOSCH GROUP ROBERT-BOSCH-PLATZ 1 GERLINGEN-SCHILLERHÖHE, 70839 GERMANY | ATTN: DR. MARKUS FORSCHNER TITLE: CHIEF FINANCIAL OFFICER PHONE: +1 (917) 421-7209 EMAIL: MARKUS.FORSCHNER@DE.BOSCH.COM | TRADE PAYABLE | | | | $ 45,088,793 |
| 4 | MAZDA 3-1 SHINCHI, FUCHU-CHO HIROSHIMA, 730-8670 JAPAN | ATTN: JEFF GUYTON TITLE: CHIEF FINANCIAL OFFICER PHONE: +1 (800) 222-5500 EMAIL: JEFF.GUYTON@MAZDA.COM | TRADE PAYABLE / CUSTOMER ADVANCE | | | | $ 30,091,528 |
| 5 | GRANGES BOX 5505 STOCKHOLM, 114 85 SWEDEN | ATTN: JOHAN MENCKEL TITLE: CHIEF EXECUTIVE OFFICER PHONE: +46 (8) 459-5900 EMAIL: JOHAN.MENCKEL@GRANGES.COM | TRADE PAYABLE | | | | $ 26,141,936 |
| 6 | TESLA 1 TESLA ROAD AUSTIN, TX 78725 UNITED STATES | ATTN: VAIBHAV TANEJA TITLE: CHIEF FINANCIAL OFFICER PHONE: +1 (888) 518-3752 EMAIL: VTANEJA@TESLA.COM | TRADE PAYABLE / CUSTOMER ADVANCE | | | | $ 22,215,569 |
| 7 | TEKSID VIA UMBERTO II, 5 CARMAGNOLA, 10022 ITALY | ATTN: VIRGILIO CERUTTI TITLE: CHIEF EXECUTIVE OFFICER PHONE: +48 (33) 853-8200 EMAIL: VIRGILIO.CERUTTI@STELLANTIS.COM | TRADE PAYABLE | | | | $ 21,520,637 |
| 8 | NISSIN KOGYO CO., LTD. 172 KAMISOYAGI YAMATO-CITY, KANAGAWA 242-0029 JAPAN | ATTN: YUICHIRO ASANO TITLE: CHIEF EXECUTIVE OFFICER PHONE: +46 (264) 1221 EMAIL: | TRADE PAYABLE | | | | $ 14,297,962 |
| 9 | BASF STORKOWER STRAßE 146 BERLIN, 10407 GERMANY | ATTN: DIRK ELVERMANN TITLE: CHIEF FINANCIAL OFFICER AND CHIEF DIGITAL OFFICER PHONE: +1 (973) 245-6000 EMAIL: DIRK.ELVERMANN@BASF.COM | TRADE PAYABLE | | | | $ 14,285,830 |
| 10 | MACNICA 1-6-3 SHIN-YOKOHAMA YOKOHAMA , 222-8561 JAPAN | ATTN: AKINOBU MIYOSHI TITLE: CO-CHIEF EXECUTIVE OFFICER PHONE: +1 (408) 205-7141 EMAIL: AKINOBUMIYOSHI@GMAIL.COM | TRADE PAYABLE | | | | $ 14,084,332 |
| 11 | COVESTRO KAISER-WILHELM-ALLEE 60 LEVERKUSEN, 51373 GERMANY | ATTN: SUCHETA GOVIL TITLE: CHIEF COMMERCIAL OFFICER PHONE: +1 (412) 413-2673 EMAIL: SUCHETA.GOVIL@COVESTRO.COM | TRADE PAYABLE | | | | $ 13,683,540 |
| 12 | INTEGRATED MICRO-ELECTRONICS NORTH SCIENCE AVENUE, SPECIAL EXPORT PROCESSING ZONE BIÑAN, 4024 PHILLIPINES | ATTN: ERIC DE CANDIDO TITLE: CHIEF OPERATING OFFICER PHONE: +63 (2) 7756-6840 EMAIL: ERIC.DECANDIDO@GLOBAL-IMI.COM | TRADE PAYABLE | | | | $ 11,998,543 |
| 13 | RENESAS ELECTRONICS TOYOSU FORESIA TOKYO, 135-0061 JAPAN | ATTN: HIDETOSHI SHIBATA TITLE: CHIEF EXECUTIVE OFFICER PHONE: +1 (408) 432-8888 EMAIL: HIDETOSHI.SHIBATA@RENESAS.COM | TRADE PAYABLE | | | | $ 11,481,387 |
| 14 | WIPRO LIMITED DODDAKANNELLI, SARJAPUR ROAD BENGALURU , 560 035 INDIA | ATTN: SRINI PALLIA TITLE: CEO AND MANAGING DIRECTOR PHONE: +1 (732) 394-8255 EMAIL: SPALLIA@WIPRO.COM | TRADE PAYABLE | | | | $ 11,426,300 |
| 15 | WUHU FORESIGHT TECHNOLOGY CO. LTD NO. 2, LINGYUAN ROAD WUHU CITY, 241000 CHINA | ATTN: LU WENBO TITLE: GENERAL MANAGER PHONE: +86 (553) 596-3550 EMAIL: FS@FORESIGHT-INT.COM | TRADE PAYABLE | | | | $ 10,667,613 |
| 16 | MITSUBA CORPORATION 1-2681 HIROSAWA-CHO KIRYU, GUNMA 376-8555 JAPAN | ATTN: HIROAKI TANJI TITLE: BOARD MEMBER PHONE: +81 (277) 52-0111 EMAIL: H-TANJI@MITSUBA.CO.JP | TRADE PAYABLE | | | | $ 10,302,024 |
| 17 | MITSUBISHI 3-1, MARUNOUCHI 2-CHOME TOKYO, 100-8086 JAPAN | ATTN: YUZO NOUCHI TITLE: CORPORATE FUNCTIONAL OFFICER PHONE: +1 (888) 648-7820 EMAIL: YUZO.NOUCHI@MITSUBISHICORP.COM | TRADE PAYABLE | | | | $ 10,279,377 |
| 18 | BITRON STRADA DEL PORTONE 95 GRUGLIASCO, 10095 ITALY | ATTN: ALBERTO MORO TITLE: CHIEF EXECUTIVE OFFICER PHONE: +39 (011) 4029-111 EMAIL: ALBERTO.FARCI@BITRON-IND.COM | TRADE PAYABLE | | | | $ 10,124,497 |

Debtor ___MARELLI AUTOMOTIVE LIGHTING USA, LLC et al.___                                                                                                   Case number (if known)_____

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 19 | AMS-OSRAM AG TOBELBADER STRASSE 30 PREMSTAETTEN, 8141 AUSTRIA | ATTN: ALDO KAMPER TITLE: CHIEF EXECUTIVE OFFICER PHONE: +43 (3136) 500-0 EMAIL: ALDO.KAMPER@OSRAM.COM | TRADE PAYABLE | | | | $     9,967,101 |
| 20 | SUZUKI MOTOR CORPORATION 300 TAKATSUKA-MACHI HAMAMATSU, 432-8611 JAPAN | ATTN: MASAKI KUWABARA TITLE: MANAGER OF LEGAL COMPLIANCE PHONE: +81 (53) 455-2111 EMAIL: MASAKIKUWABARA@HHQ.SUZUKI.CO.JP | TRADE PAYABLE | | | | $     9,863,244 |
| 21 | QUALCOMM TECHNOLOGIES 5775 MOREHOUSE DR. SAN DIEGO, CA 92121 UNITED STATES | ATTN: ANN CHAPLIN TITLE: GENERAL COUNSEL AND CORPORATE SECRETARY PHONE: +1 (858) 587-1121 EMAIL: ACHAPLIN@QUALCOMM.COM | TRADE PAYABLE | | | | $     9,603,170 |
| 22 | AVNET 2211 SOUTH 47TH STREET PHOENIX, AZ 85034 UNITED STATES | ATTN: MICHAEL R. MCCOY TITLE: GENERAL COUNSEL AND CHIEF LEGAL OFFICER PHONE: +1 (800) 332-8638 EMAIL: MICHAEL.MCCOY@AVNET.COM | TRADE PAYABLE | | | | $     9,463,615 |
| 23 | ARROW ELECTRONICS 7340 S. ALTON WAY UNIT 11G CENTENNIAL, CO 80112 UNITED STATES | ATTN: CARINE JEAN-CLAUDE TITLE: SENIOR VICE PRESIDENT AND CHIEF LEGAL AND COMPLIANCE OFFICER PHONE: +1 (855) 326-4757 EMAIL: CJEANCLAUDE@ARROW.COM | TRADE PAYABLE | | | | $     9,196,498 |
| 24 | TIBERINA GROUP VIA TIBERINA, 123 COLLAZZONE, PG 06050 ITALY | ATTN: ALBERTO FARCI TITLE: GENERAL MANAGER PHONE: +42 (32) 670-9197 EMAIL: ALBERTO.FARCI@TIBERINA.CZ | TRADE PAYABLE | | | | $     8,970,886 |
| 25 | UNIPRES CORPORATION SUN HAMADA BLDG. 5F YOKOHAMA, 222-0033 JAPAN | ATTN: YUKIHIKO MORITA TITLE: SENIOR EXECUTIVE VICE PRESIDENT, FINANCE & ACCOUNTING PHONE: +81 (45) 477-5121 EMAIL: INFO@UNIPRESSCORP.COM | TRADE PAYABLE | | | | $     8,546,082 |
| 26 | BTV TECHNOLOGIES GMBH HEINRICH-HERTZ-STR. 12 UNNA, D-59423 GERMANY | ATTN: MAXIMILIAN KRANE TITLE: CHIEF EXECUTIVE OFFICER PHONE: +49 (2303) 333-0 EMAIL: MAXIMILIANNAN@BTV-GRUPPE.COM | TRADE PAYABLE | | | | $     8,128,940 |
| 27 | VISTEON ONE VILLAGE CENTER VAN BUREN TOWNSHIP, MI 48111 UNITED STATES | ATTN: BRETT PYNNONEN TITLE: SENIOR VICE PRESIDENT AND GENERAL COUNSEL PHONE: +1 (734) 627-7384 EMAIL: BPYNNONEN@VISTEON.COM | TRADE PAYABLE | | | | $     7,596,117 |
| 28 | VALEO 100 RUE DE COURCELLES PARIS, 75017 FRANCE | ATTN: CHRISTOPHE PÉRILLAT TITLE: CHIEF EXECUTIVE OFFICER PHONE: +33 (0)1-40-55-20-20 EMAIL: CHRISTOPHE.PERILLAT@VALEO.COM | TRADE PAYABLE | | | | $     7,540,594 |
| 29 | PENSION BENEFIT GUARANTY CORPORATION 1200 K STREET, NW WASHINGTON, DC 20005 UNITED STATES | ATTN: LISA CLARK TITLE: CHIEF FINANCIAL OFFICER PHONE: +1 (202) 326-4400 EMAIL: PBGCPUBLICAFFAIRS@PBGC.GOV | PENSION | CONTINGENT, UNLIQUIDATED, DISPUTED | | | UNLIQUIDATED |
| 30 | PENSION PROTECTION FUND RENAISSANCE CROYDON, CR0 2NA UNITED KINGDOM | ATTN: MICHELLE OSTERMANN TITLE: CHIEF EXECUTIVE OFFICER PHONE: +44 (20) 8633-4902 EMAIL: MICHELLE.OSTERMANN@PPF.CO.UK | PENSION | CONTINGENT, UNLIQUIDATED, DISPUTED | | | UNLIQUIDATED |

# SHAREHOLDER'S RESOLUTION

## of the shareholder of

## Marelli Germany GmbH

June 9, 2025

**Marelli Corporation**, incorporated under the laws of Japan, registered with the Japanese Legal Affairs Bureau under number 0300-01-013831, with registered office 4-19 Miyahara-cho 2-chome, Kita-Ku, Saitama city, Saitama 331-8501, Japan, is the sole shareholder (the "**Shareholder**") of

**Marelli Germany GmbH,** a limited liability company (*Gesellschaft mit beschränkter Haftung*), incorporated and existing under the laws of the Federal Republic of Germany, registered in the commercial register (*Handelsregister*) of the local court (*Amtsgericht*) of Stuttgart under HRB 353544, with registered seat at Ludwig-Erhard-Straße 4, 72760 Reutlingen, Germany (the "**Company**").

## Preamble

1.  The Company informed the Shareholder that according to the assessment of the Company's directors, it is desirable and in the best interest of the Company that the Company files voluntary petitions for relief  under the provisions of chapter 11 of title 11 (the "**Chapter 11 Petition**"; such proceedings, the "**Chapter 11 Proceedings**") of the United States Code, 11 U.S.C. § 101 et seq. (as amended, the "**US Bankruptcy Code**") alongside a number of other members of the Marelli group of companies (including the Company, the "**Group**") in order to facilitate a restructuring of the indebtedness of the Group, stabilize the liquidity situation of the Group and allow the Group to secure its positive going-concern in the long-term. As part of the Chapter 11 Proceedings, among other things, certain Group entities intend to enter into a debtor-in-possession financing under the US Bankruptcy Code (the "**DIP Financing**"), benefitting the Group (including the Company) and the Company intends to grant a guarantee and to provide further security over certain or all of its assets in respect of liabilities under and in connection with the DIP Financing (the measures described in this paragraph 1 together with any related measures, the "**Transaction**").

2.  As part of or in connection with the Transaction, the Company intends to enter into the following documents, if so requested by the Shareholder:

    (a)  A certain restructuring support agreement by and among the Company, certain other members of the Group, certain of its affiliates, certain consenting creditors, and certain consenting parties (the "**Restructuring Support Agreement**");

    (b)  any other documents governed by German law or any other law, including without limitation:

        (i)  agreements;

        (ii)  security documents;

        (iii)  shareholder resolutions with respect to the Company's subsidiaries' execution of any documents in connection with the Transaction;

(iv)    any other resolutions;

(v)    notices;

(vi)    certificates;

(vii)    requests;

(viii)    powers of attorney;

(ix)    stock transfer forms;

(x)    other letters or declarations;

(xi)    adviser retention agreements;

(xii)    fee arrangements;

(xiii)    any guarantees, certificates, instruments, agreements, security agreements, intercreditor agreements, extension or amendment agreements, any incremental agreement, or any other document related to the Company entering into and performing its obligations in respect of the DIP Financing;

(xiv)    any other petitions, schedules, motions, lists, applications, pleadings, and other papers as part of the Chapter 11 Proceedings; and/or

(xv)    any and all other letters, forms, transfer, deeds, amendments, supplements, waivers, consents and other documents that are or will be required in connection with the Transaction and/or the documents set out in 2(a) through 2(b) above (the documents in 2(a) through 2(b) together, the "**Transaction Documents**").

3.    The Company reminded the Shareholder of certain guarantees the Company has issued in respect of certain pension obligations of Automotive Lighting UK Limited, which has guaranteed the following ALUK schemes: Carello Lighting Staff Pension Scheme, Carello Lighting Works Pension Scheme and Magneti Marelli SRBS (the **Schemes**").

*Consideration of material detriment statutory provisions*

(a)    The Shareholder and the Company had regard to the material detriment provisions of the UK Pensions Act 2004 ("**PA 2004**") including Section 38B PA 2004 (Section 38 contribution notice issued by reference to material detriment test: defence), which provides:

*"Condition A is that, before becoming a party to the act or failure, P gave due consideration to the extent to which the act or failure might detrimentally affect in a material way the likelihood of accrued scheme benefits being received.*

*(4) Condition B is that, in any case where as a result of that consideration P considered that the act or failure might have such an effect, P took all reasonable steps to eliminate or minimise the potential detrimental effects that the act or failure might have on the likelihood of accrued scheme benefits being received.*

*(5) Condition C is that, having regard to all relevant circumstances prevailing at the relevant time, it was reasonable for P to conclude that the act or failure would not*

*detrimentally affect in a material way the likelihood of accrued scheme benefits being received."*

(b)     The above conditions were considered in the context of the impact of the Chapter 11 Proceedings and associated DIP Financing on the Schemes and the steps taken by the Company including in relation to reviewing the impact of the Chapter 11 Proceedings and associated DIP Financing on the employer covenant (and therefore the Schemes) and discussion of potential mitigation measures. These steps, taken together with associated advisory fees being the "**Relevant Steps**".

*Condition A*

The Shareholder as well as the directors considered and concluded that the Chapter 11 Proceedings and associated DIP Financing and the Relevant Steps do not give rise to material detriment as described in the statutory provisions above as the Relevant Steps are instead undertaken with the goal of mitigating any material detriment to the Schemes. This is as compared to, for example, a situation where no mitigation was agreed.

*Condition B*

The Shareholder as well as the directors concluded that Condition B did not apply as there is no material detriment in connection with the Chapter 11 Proceedings and associated DIP Financing and the Relevant Steps.

*Condition C*

The Shareholder as well as the directors concluded that there was no material detriment.

*Consideration of the UK Employer Insolvency statutory provisions*

(c)     Key clauses in respect of the UK Employer Insolvency provisions were considered including Section 38D PA 2004 (Section 38 contribution notice issued by reference to employer insolvency test: defence), which provides:

*"(4) Condition A is that, before becoming a party to the act or failure, P gave due consideration to the extent to which, if a debt under section 75(4) of the Pensions Act 1995 were to fall due from the employer to the scheme—*

*(a) immediately after the act or failure, or*

*(b) where the failure might continue for a period of time, at any time within that period,*

*the act or failure might materially reduce the amount of the debt likely to be recovered by the scheme.*

*(5) Condition B is that, in any case where as a result of that consideration P considered that the act or failure might have such an effect, P took all reasonable steps to eliminate or minimise the potential for the act or failure to have such an effect.*

*(6) Condition C is that, having regard to all relevant circumstances prevailing at the time of the act or at the time when the failure to act first occurred, it was reasonable for P to conclude that, if a debt under section 75(4) of the Pensions Act 1995 were to fall due from the employer to the scheme—*

*(a) immediately after the act or failure, or*

*(b) where the failure might continue for a period of time, at any time within that period,*

*the act or failure would not materially reduce the amount of the debt likely to be recovered by the scheme".*

(d)    The above conditions were considered in the context of the impact of the Chapter 11 Proceedings and associated DIP Financing on the Schemes and the Relevant Steps.

*Condition A*

The Shareholder as well as the directors considered whether there was any impact on the recovery to the Schemes as referred to above.

*Condition B*

The Shareholder as well as the directors concluded that Condition B did not apply as this was not a case where there was such an impact on the recovery by the Schemes.

*Condition C*

The Shareholder as well as the directors again concluded that there was no such impact on the recovery by the Schemes in connection with the Chapter 11 Proceedings and associated DIP Financing and the Relevant Steps.

*Consideration of the UK Employer Resources statutory provisions*

(e)    Key clauses in respect of the UK Employer Resources provisions were considered including Section 38F PA 2004 (Section 38 contribution notice issued by reference to employer resources test: defence), which provides:

*"(3) Condition A is that, before becoming a party to the act or failure, P gave due consideration to the extent to which the act or failure might reduce the value of the resources of the employer relative to the estimated section 75 debt in relation to the scheme.*

*(4) Condition B is that, in any case where as a result of that consideration P considered that the act or failure might have such an effect, P took all reasonable steps to eliminate or minimise the potential for the act or failure to have such an effect.*

*(5) Condition C is that, having regard to all relevant circumstances prevailing at the time of the act or at the time when the failure to act first occurred, it was reasonable for P to conclude that the act or failure would not bring about a reduction in the value of the resources of the employer that would be a material reduction relative to the estimated section 75 debt in relation to the scheme".*

(f)    The above conditions were considered in the context of the impact of the Chapter 11 Proceedings and associated DIP Financing on the Schemes and the Relevant Steps.

*Condition A*

The Shareholder as well as the directors considered whether the Chapter 11 Proceedings and associated DIP Financing and the Relevant Steps might reduce the value of the resources as set out above.

*Condition B*

The Shareholder as well as the directors concluded that Condition B did not apply as the Chapter 11 Proceedings and associated DIP Financing and the Relevant Steps did not reduce the value of the resources.

*Condition C*

The Shareholder as well as the directors concluded that the Chapter 11 Proceedings and associated DIP Financing and the Relevant Steps did not reduce the value of the resources as set out above.

*Avoidance of employer debt (section 58A of the Pensions Act 2004)*

(g)     The key provision in respect of avoidance of employer debt were considered including Section 58A PA 2004 (Offence of avoidance of employer debt), which provides:

*"(2) A person commits an offence only if—*

*(a) the person does an act or engages in a course of conduct that—*

> *(i) prevents the recovery of the whole or any part of a debt which is due from the employer in relation to the scheme under section 75 of the Pensions Act 1995 (deficiencies in the scheme assets)*
>
> *(ii) prevents such a debt becoming due,*
>
> *(iii) compromises or otherwise settles such a debt, or*
>
> *(iv) reduces the amount of such a debt which would otherwise become due,*

*(b) the person intended the act or course of conduct to have such an effect, and*

*(c) the person did not have a reasonable excuse for doing the act or engaging in the course of conduct".*

(h)     The Shareholder as well as the directors concluded that the Chapter 11 Proceedings and associated DIP Financing did not impact any current or future debt to the Schemes in a manner as set out at (i) to (iv) above as the Relevant Steps are intended to improve the outcome to the Schemes.

*Conduct risking accrued scheme benefits (section 58B of the Pensions Act 2004)*

(i)     The key provision in respect of conduct risking accrued scheme benefits was considered including Section 59B of the Pensions Act 2004 (Offence of conduct risking accrued scheme benefits), which provides:

*"(2) A person commits an offence only if—*

*(a) the person does an act or engages in a course of conduct that detrimentally affects in a material way the likelihood of accrued scheme benefits being received (whether the benefits are to be received as benefits under the scheme or otherwise),*

*(b) the person knew or ought to have known that the act or course of conduct would have that effect, and*

*(c) the person did not have a reasonable excuse for doing the act or engaging in the course of conduct"*

*(3) A reference in this section to an act or a course of conduct includes a failure to act"*

(j)    The Shareholder as well as the directors concluded that there was no such material impact on accrued benefits as a result of the Chapter 11 Proceedings and associated DIP Financing and the Relevant Steps, again as the Relevant Steps are intended to improve the outcome to the Schemes.

Waiving, to the extent legally possible, any and all formalities and notice periods provided by law or by the articles of association of the Company as to a shareholder's meeting, in particular but not limited to the time and place, the Shareholder hereby convenes as sole shareholder a shareholder's meeting and resolves as follows:

## Shareholder's resolution

1.    The Shareholder authorises each partner, director, manager, or other duly appointed officer of Marelli Automotive Lighting USA LLC, any attorneys-in-fact acting on behalf of the Company pursuant to powers of attorney, and the Company (collectively, the "**Authorised Signatories**") to file the Chapter 11 Petition and take any actions related to the Chapter 11 Petition, the Chapter 11 Proceedings and any other aspects of the Transaction.

2.    The Shareholder approves the terms of, and the transactions contemplated by, the Transaction Documents and resolves that the Company (acting through its managing directors (*Geschäftsführer*) or any of the Authorised Signatories) shall execute, deliver and perform any Transaction Document to which it is a party.

3.    The Shareholder authorises and instructs (*anweisen*) the managing directors (*Geschäftsführer*) and the Authorized Signatories to execute, deliver and perform any Transaction Document to which the Company is a party.

4.    The Shareholder authorises and instructs (*anweisen*) the managing directors (*Geschäftsführer*) and the Authorised Signatories to sign and/or despatch on behalf of the Company all documents and notices to be signed and/or despatched by the Company under or in connection with any Transaction Document to which the Company is or is intended to be a party.

5.    The Shareholder authorises and instructs (*anweisen*) the managing directors (*Geschäftsführer*) and the Authorised Signatories, and consents that the managing directors (*Geschäftsführer*) and the Authorised Signatories make all declarations, take all other acts and receive any declaration vis-à-vis third parties for and on behalf of the Company useful and appropriate for the purposes set out in paragraph 2(a) to 2(b) above and conclude, modify, confirm, restate and/or amend agreements, declarations and other documents of any kind and in each case to take all required actions for such conclusion, modification, confirmation, restatement and/or amendment.

6.    The Shareholder authorises and instructs (*anweisen*) the managing directors (*Geschäftsführer*) of the Company to grant any upstream and cross stream security and guarantee as contemplated in the Transaction Documents and to defer any rights of the Company against the Shareholder or any other Group company in connection with or resulting from such security and/or guarantees (in particular, any indemnity, recourse claims and/or rights to request security for such claims) if and as contemplated in the Transaction Documents. This instruction (*Weisung*) shall only apply to the extent that such granting and deferral is not prohibited by mandatory

statutory provisions and does not violate any statutory duties of the managing directors (*Geschäftsführer*) of the Company which protect the Company's third-party creditors.

7.   The Shareholder irrevocably consents to any pledges over the shares in the Company together with all ancillary rights and claims associated therewith as security under or in connection with the Transaction Documents and to any transfers of the shares in the Company together with all ancillary rights and claims associated therewith upon enforcement of such pledges in connection with the Transaction Documents.

8.   The Shareholder hereby irrevocably consents (*einwilligen*) to and/or ratifies (*genehmigt*) any past or future action taken under or in connection with the Transaction and the Transaction Documents on behalf of the Company by the Authorised Signatories and releases the Authorised Signatories from the restrictions of § 181 of the German Civil Code (*Bürgerliches Gesetzbuch*) or any similar restrictions under applicable law. This consent, ratification and release includes, without limitation, the authorisation to grant (sub-)powers of attorney (*(Unter-)Vollmacht*) including the release from the exemption from the restrictions of § 181 of the German Civil Code (*Bürgerliches Gesetzbuch*) or any similar restrictions under applicable law.

9.   It is reasonable on behalf of the Company and also on behalf of its key decisionmakers to conclude that the conditions for the legal defences relating to material detriment (s38B PA 2004), employer insolvency (s38D PA 2004), employer resources (38F PA 2004), avoidance of employer debt (s58A PA 2004), and conduct risking accrued scheme benefits (s58B PA 2004) are met in relation to each of the above further considerations in respect of the Schemes.

10.  The Shareholder is satisfied that the Relevant Steps appropriately mitigate the impact of the Chapter 11 Proceedings and associated DIP Financing.

11.  This shareholder's resolution shall be construed extensively. Amendments with respect to the parties, the names of the agreements and/or the amounts in connection with the aforementioned agreements do not affect this shareholder's resolution.

12.  Any actions referred to in the above resolutions which have already been taken are hereby ratified.

13.  This resolution and any rights or obligations arising out of it are governed by German law.

14.  No further resolutions were passed. The shareholder's meeting of the Company is hereby concluded. The Shareholder expressly endorses the above resolutions and irrevocably waives the right to launch a claim against, or contest, the validity of the above resolutions.

*[Remainder of page intentionally left blank]*

**Marelli Corporation**

Signature:

Name:        David Slump

Title:        Representative Director

Execution Version

**Power of Attorney**

June 9, 2025

The undersigned

**Marelli Germany GmbH,**

a limited liability company *(Gesellschaft mit beschränkter Haftung),* incorporated and existing under the laws of the Federal Republic of Germany, registered in the commercial register *(Handelsregister)* of the local court *(Amtsgericht)* of Stuttgart under HRB 353544, with registered seat at Ludwig- Erhard-Straße 4, 72760 Reutlingen, Germany (the "Principal")

hereby authorizes David Slump, Alanna Abrahamson, Marisa lasenza, and each partner, director, manager, or other duly appointed officer of Marelli Automotive Lighting USA LLC. (each an "Attorney-in-fact"), each individually,

to represent the Principal comprehensively in connection with the filing of voluntary petitions for relief under the provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (as amended, the "US Bankruptcy Code") (the "Restructuring Matters").

This Power of Attorney includes, without limitation, the authorization:

a)  to prepare, execute (under the common seal of the Principal, if appropriate) and file on behalf of the Principal all petitions, schedules, lists, and other motions, papers, or documents (the "Pleading Documents"), and to take any and all action that they deem necessary or proper to obtain such relief, including, but not limited to, any action necessary or proper to maintain the ordinary course operations of the Principal's or any of its subsidiaries' businesses;

b)  to enter on behalf of the Principal into a restructuring support agreement (the "Restructuring Support Agreement") by and among the Principal, certain of its affiliates, certain consenting creditors, and certain consenting parties substantially in the form presented to the Attorneys-in- fact on or in advance of the date hereof;

c)  to enter on behalf of the Principal into a restructuring transaction or series of restructuring transactions by which the Principal will restructure its debt obligations and other liabilities, including but not limited to the restructuring transactions as described in the Restructuring Support Agreement (collectively, the "Restructuring Transactions") with such changes and in such form as the Attorney-in-fact or Attorneys-in-fact executing the same shall in his or their absolute discretion deem appropriate;

d)  to take or cause to be taken any and all such other and further action, and to execute (under the common seal of the Principal, if appropriate), acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents in furtherance of the Restructuring Transactions to which the Principal is or will be a party, including, but not limited to, the Restructuring Support Agreement (together with the Pleading Documents, the "Transaction Documents"), to incur and pay or cause to be paid all fees and expenses and engage such persons, in each case, in the form or substantially in the form thereof submitted to the Principal, with such changes, additions and modifications thereto as the Attorneys-in-fact executing the same shall, in their absolute discretion approve, such approval to be conclusively evidenced by such Attorney-in-fact's and/or officer's execution and delivery thereof;

e)  to take any and all actions to (i) obtain approval by a court of competent jurisdiction or any other regulatory or governmental entity of the Restructuring Support Agreement in connection with the Restructuring Transactions, and (ii) obtain approval by any court of competent jurisdiction or any other regulatory or governmental entity of any Restructuring Transactions;

f) to employ: (i) the law firm of Kirkland & Ellis LLP as general bankruptcy counsel, (ii) the law firm of Pachulski Stang Ziehl & Jones LLP as co-bankruptcy counsel, (iii) Alvarez & Marsal North America, LLC as restructuring advisor, (iv) PJT Partners Inc. as investment banker, (v) Kurtzman Carson Consultants, LLC dba Verita Global as notice and claims agent, and (vi) any other legal counsel, accountants, financial advisors, restructuring advisors or other professionals the Attorneys-in-fact deem necessary, appropriate or advisable; each to represent and assist the Principal in carrying out its duties and responsibilities and exercising its rights under the US Bankruptcy Code and any applicable law (including, but not limited to, the law firms filing any pleadings or responses); and in connection therewith, the Attorneys-in-fact, be, and hereby are authorized, empowered and directed, in accordance with the terms and conditions hereof, to execute (under the common seal of the Principal, if appropriate) appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain such services;

g) to execute (under the common seal of the Principal, if appropriate) and file all petitions, schedules, motions, lists, applications, pleadings, and other papers, execute appropriate retention agreements, pay appropriate retainers, and cause to be filed the appropriate applications for authority to retain services of the abovementioned professionals and those professionals thereafter the Attorneys-in-fact deem necessary, and to perform such further actions and execute (under the common seal of the Principal, if appropriate) such further documentation that the Attorneys-in- fact in their absolute discretion deem necessary, appropriate or desirable in accordance with this Power of Attorney;

h) to enter into any guarantees as described or contemplated by the documents (the "DIP Financing Documents") evidencing any debtor-in-possession financing obligations (the "DIP Financing") or any other documents, certificates, instruments, agreements, security agreements, intercreditor agreements, any extension amendment, any incremental agreement, or any other amendment required to consummate the transactions contemplated by the DIP Financing Documents and perform its obligations thereunder (the "DIP Obligations") and to guarantee the payment and performance of the DIP Obligations of the Principal and any other guarantor thereunder;

i) to incur the DIP Obligations and to approve the use of cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral") pursuant to the orders of the Bankruptcy Court authorizing and approving, among other things, the DIP Financing and the transactions contemplated by the DIP Term Sheet (the "DIP Orders"), and any Attorney-in-fact be, and hereby is, authorized, empowered, and directed to negotiate, execute, and deliver any and all agreements, instruments, or documents, by or on behalf of the Principal, necessary to implement the postpetition financing, including the adequate protection obligations to the prepetition secured lenders in accordance with section 363 of the Bankruptcy Code, as well as any additional or further agreements for entry into the DIP Financing Documents and the use of Cash Collateral in connection with the chapter 11 case, which agreements may require the Principal to grant adequate protection and liens to the prepetition secured lenders and each other agreement, instrument, or document to be executed and delivered in connection therewith, by or on behalf of the Principal pursuant thereto or in connection therewith, all with such changes therein and additions thereto as any Attorney-in-fact approves, such approval to be conclusively evidenced by the taking of such action or by the execution and delivery thereof;

j) to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of, each of the transactions contemplated by the DIP Financing Documents and such other agreements, certificates, instruments, receipts, petitions, motions, or other papers or required documents to which the Principal is or will be party or any order entered into in connection with the chapter 11 case (together with the DIP Financing Documents, collectively, the "Financing Documents") and to incur and pay or cause to be paid all related fees and expenses, with such changes, additions and modifications thereto as an Attorney- in-fact executing the same shall approve;

k) to: (a) prepare any amendments, waivers, consents, supplements, or other modifications under or to the DIP Financing Documents to which the Principal is a party, which shall in their sole judgment be necessary, proper, or advisable to perform the Principal's obligations under or in connection with the DIP Orders or any of the other Financing Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions and (b) execute and deliver such amendments,

2

waivers, consents, supplements, or other modifications under such agreements or documents, the execution and delivery thereof by such Attorney-in-fact to be deemed conclusive evidence of the approval and ratification thereof by such Attorney-in-fact or that such Attorney-in-fact deemed such standard to be met;

l) to (a) prepare any amendments, waivers, consents, supplements, or other modifications under the DIP Financing Documents and/or all other agreements, instruments, documents, notices and certificates constituting exhibits to or that may be required, necessary, appropriate, desirable or advisable to be executed and delivered pursuant to the DIP Financing Documents or otherwise permitted thereunder or related thereto (each an "Additional DIP Facility Document") to which the Principal is a party as may be necessary, convenient, advisable, desirable or appropriate at any time from time to time, which amendments, waivers, consents or supplements may provide for modifications or relief under such agreements or documents and may require consent payments, fees or other amounts payable in connection therewith, and (b) execute and deliver such amendments, waivers, consents, supplements, or other modifications under such agreements or documents as such Attorney-in-fact shall deem to be necessary, convenient, advisable, desirable or appropriate, such execution and delivery by such Attorney-in-fact to be conclusive evidence of his or her determination and approval of the necessity, appropriateness or advisability thereof.

In addition to the specific authorizations heretofore conferred upon the Attorneys-in-fact, each Attorney-in-fact, each individually, hereby is authorized, directed and empowered to execute (under hand or under the common seal of the Principal if appropriate), acknowledge, deliver, and file any and all agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds, amendments, supplements, waivers, consents and other documents on behalf of the Principal relating to the Restructuring Matters or to fulfil the intent of the foregoing authorizations.

Each of the Attomeys-in-fact (and their designees and delegates) be, and hereby is, authorized and directed and empowered in the name of and on behalf of the Principal, to take or cause to be taken any all such other and further action, and to execute (under the common seal of the Principal, if appropriate), acknowledge, deliver, and file any and all such agreements, certificates, instruments, amendments. supplements, waivers, consents and other documents and to pay all expenses, including but not limited to filing fees, in each case as in such Attorney-in-fact's or Attorneys-in-fact' absolute discretion, shall be necessary, appropriate, or desirable in order to fully carry out the intent and accomplish the purposes of the authorizations granted herein.

Each Attorney-in-fact hereby is authorized, directed and empowered in the name of, and on behalf of, the Principal to do all such other acts, deeds and other things as the Principal itself may lawfully do, in accordance with its governing documents and applicable law, howsoever arising in connection with the matters above, or in furtherance of the intentions expressed in this Power of Attorney, including, but not limited to, the negotiation, finalization, execution (under hand or common seal, whether or not expressed to be a deed, as may be necessary or appropriate) and delivery of any other agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds and other documents whatsoever as the individual acting may in his/her absolute and unfettered discretion approve, deem or determine necessary, appropriate or advisable, such approval, deeming or determination to be conclusively evidenced by said individual taking such action or the execution thereof.

To the extent legally permissible, each Attomeys-in-fact shall be released from the restrictions set forth in sec. 181 of the German Civil Code and any similar restrictions on self-dealing and multiple party representations pursuant to any other jurisdiction and shall be authorized to grant and to revoke sub-powers of attorney in the same extent - also including the release from any restrictions on selfdealing and multiple party representation - within the scope of this Power of Attorney.

In case of doubt, this Power of Attorney shall be construed extensively in order to achieve the purpose for which it was granted. This Power of Attorney may be used several times.

To the extent legally permissible, the liability of the Attorneys-in-fact is excluded.

The Principal hereby undertakes to recognize and, if necessary, ratify all documents, deeds, acts, declarations and measures which any of the Attomeys-in-fact executes, issues or takes in the exercise of

3

this Power of Attorney.

This Power of Attorney shall be governed by the laws of the Federal Republic of Germany, without regard to the principles of conflicts of law. The Regional Court Berlin shall have exclusive jurisdiction for any and all disputes in connection with this Power of Attorney.

*[Signature page follows]*

For the Principal:

**Marelli Germany GmbH**

Name: PETER BARTRAM

Capacity: Managing Director

Name:    **Martin Schmidt-Prange**

Capacity:    **Managing Director**

5

Fill in this information to identify the case and this filing:

| | |
|---|---|
| Debtor Name | **Marelli Germany GmbH** |
| United States Bankruptcy Court for the: | **District of Delaware** |
| | (State) |
| Case number (If known): | |

## Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors     12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)*

☐ *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*

☐ *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*

☐ *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*

☐ *Schedule H: Codebtors (Official Form 206H)*

☐ *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*

☐ Amended Schedule

☒ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*

☒ Other document that requires a declaration **List of Equity Security Holders and Corporate Ownership Statement**

I declare under penalty of perjury that the foregoing is true and correct.

| Executed on | 06/11/2025 | ☒ */s/ Marisa Iasenza* |
|---|---|---|
| | MM/ DD/YYYY | Signature of individual signing on behalf of debtor |
| | | **Marisa Iasenza** |
| | | Printed name |
| | | **Authorized Signatory** |
| | | Position or relationship to debtor |

**Official Form 202**          **Declaration Under Penalty of Perjury for Non-Individual Debtors**